**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMIE LOPEZ-LORZA,

       Petitioner,                         Civil No. 07-CV-13792
                                                HONORABLE MARIANNE O. BATTANI
v.                                       UNITED STATES DISTRICT JUDGE

CARMEN PALMER

       Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**

     Jamie Lopez-Lorza, ("Petitioner"), presently confined at the Riverside

Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In his application, Petitioner challenges his conviction

and sentence on one count of possession of over 650 grams of cocaine.  MICH. COMP.

LAWS § 333.7403(2)(a)(i).  For the reasons stated below, Petitioner's application for writ

of habeas corpus is **DENIED WITH PREJUDICE**.

**I.  BACKGROUND**

**A.  Factual Background**

     Petitioner was convicted of the above charge following a jury trial in the former

Recorders Court for the City of Detroit, Michigan (now Wayne County Circuit Court, 3rd

Circuit), and sentenced to a then-mandatory term of life imprisonment with the

possibility of parole.

     Lopez-Lorza's conviction arose out of a traffic stop on the I-75 expressway in

Detroit, Michigan, which occurred on the night of November 6, 1995.  Officer Michael

Zachary and Michigan State Trooper Mario Burns testified at trial that they surveilled

Petitioner's Nissan Quest for several hours after receiving an anonymous tip that

Petitioner might be involved in illegal activity. (T 10/7/97, 77; T 10/8/97, 16-18).  State

Troopers J. Michael Taylor and Michael Oliver also testified at trial that they stopped

Lopez-Lorza's minivan at around midnight after receiving an order from their superiors

to stop the van if they observed any moving violations.  The trial court found that the

officers initiated the stop of Petitioner's van after they watched him cross over the yellow

line into the shoulder of the freeway while also driving between 61 and 66 m.p.h. in a 55

m.p.h. zone. (T 10/7/97, 106).  Petitioner disputes this account and claims that he did

not cross over the yellow line into the shoulder and was not speeding.  The officers also

testified that Lopez-Lorza allegedly stated "that he was following somebody, didn't know

the area, and may have driven off on the left side."  (T 10/7/97, 108).  Petitioner also

denies making this statement to the officer.

     After the officers stopped Lopez-Lorza's van on I-75, Trooper Taylor asked

Petitioner if he could search the vehicle, to which Petitioner allegedly consented.  While

Trooper Taylor was searching the van, Trooper Oliver walked Petitioner back to the

patrol car and directed him to sit in the back seat.  Trooper Taylor did not find any illegal

contraband in the van during the first part of his search.  While Trooper Taylor was still

searching the vehicle, another State Police patrol car (driven by Troopers Clarence

Vincent and Robert Hendrix) pulled up to serve as back up to the other officers.

Troopers Vincent and Hendrix then began to help in the search of the van.  During this

part of the search, Trooper Vincent allegedly attempted to lower one of the van

windows.  However, he testified that the window only went halfway down because something in the window well was obstructing its movement.  Trooper Vincent then used his flashlight to look inside of the window well and saw several packages wrapped in duct tape.  The Troopers then dismantled the van doors and discovered eight packages wrapped in duct tape, four in the window well and four in the door panel.  The officers then handcuffed Petitioner and placed him under arrest while he was still seated in the backseat of the patrol car.  (T 10/7/97, 52-66).  The stop, detention, and search lasted approximately 15-20 minutes.

After the arrest, two of the eight packages were opened, tested, and found to contain cocaine.  One package weighed 1,247.9 grams and the other weighed 1,233.5 grams. (T 10/7/97, 21-22).  The other six packages were not opened, tested, or weighed.  Mark Martinez of the Michigan State Police Lab also testified that he found a latent finger print on one of the packages that was matched to Lopez-Lorza's right thumb.  Other prints found on the packages were not identifiable.  (T 10/7/97, 31-44).

## B. Procedural History

Petitioner was bound over for trial at the Recorders Court for the City of Detroit (now Wayne County Circuit Court) on November 17, 1995.  He filed a motion to suppress physical evidence on February 16, 1996, for which an evidentiary hearing was held on several dates between the dates of October 11, 1996 and February 6, 1997, before the Honorable Kym L. Worthy, Recorders Court Judge.  This motion was denied on May 30, 1997.  Lopez-Lorza filed an interlocutory appeal to the Michigan Court of Appeals challenging the ruling, which was denied on August 28, 1997.  Petitioner then

3

appealed this denial to the Michigan Supreme Court, which was also denied on November 7, 1997.

Petitioner was convicted in a jury trial that was held from October 7-9, 1997, and was sentenced on October 27, 1997, to life in prison with the possibility of parole. Lopez-Lorza then filed a motion for new trial, which was denied.  People v. Lopez-Lorza, 95-12879 (Third Judicial Circuit Court, January 30, 1998).

Subsequently, Petitioner's counsel filed his claim of appeal with the wrong court. As a result, the appeal was not filed with the correct court until several days after the 21-day time limit.  The Michigan Court of Appeals then dismissed the appeal as untimely. People v. Lopez-Lorza, 210383 (Mich.Ct.App. July 28, 1998); reh. den. September 21, 1998.  A subsequent delayed application for leave to appeal was denied by the Michigan Supreme Court, which stated that relief could be sought under Michigan Court Rule 6.500. People v. Lorza, 461 Mich. 871; 603 N.W.2d 265 (1999).

Lopez-Lorza then filed a MCR 6.500 motion seeking relief from judgment in the Recorders Court.  On March 9, 2000, Petitioner also filed a motion for evidentiary hearing and supplemental authority.  After three years without a ruling by the state court, Petitioner filed a *Pro Per* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 in this Court.  An amended petition was filed on December 10, 2003.  In this amended petition, Lopez-Lorza argued seven substantive issues.  This Court declined to hear six of the seven issues, but granted a conditional writ of habeas corpus on the ground that Lopez-Lorza was deprived of his constitutional right to the effective assistance of appellate counsel when his counsel failed to file a timely claim of appeal. This Court ordered that Lopez-Lorza's appeal of right be reinstated and filed in the

4

Michigan Court of Appeals and that he be provided with appointed appellate counsel.

The Michigan Court of Appeals subsequently heard Lopez-Lorza's appeal and affirmed

his conviction. People v. Lopez-Lorza, No. 2006 WL 335826 (Mich. Ct. App. February

14, 2006); reconsideration den. March 31, 2006; lv. den. 477 Mich. 867, 721 N.W.2d

219 (2006); cert. den. 127 S. Ct. 1038 (2007).

On September 10, 2007, Lopez-Lorza filed a Petition for Writ of Habeas Corpus

and a Memorandum of Law in Support of the Petition in this Court.  The petition and

memorandum argued these issues:

> A.  Petitioner was denied his state and federal constitutional right to the effective assistance of trial counsel when counsel failed to raise all of the legitimate claims supported by the testimony taken at the suppression hearings, failed to object to drug profile evidence at trial, and failed to request critical jury instructions.

> B.  Petitioner's state and federal constitutional right to a fair trial was violated by the improper "drug profile" testimony by Detective Burns, admitted as substantive evidence, as a result of the combined errors of the trial Court, the prosecutor, and the ineffectiveness of defense counsel.

> C.  Petitioner was denied his state and federal constitutional right to a properly instructed jury when the trial court refused defense counsel's requests for instructions and erred in instructing on essential elements of the principal offense.

## II.  STANDARD OF REVIEW

**A.  Standard of Review**

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

5

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 410-11.

A federal court can grant habeas corpus relief only if the trial error had a "substantial and injurious effect" or influence on the jury's verdict, regardless of whether the state court has conducted a harmless error analysis.  Fry v. Pliler, 127 S.Ct. 2321, 2328 (2007).

**B.  Procedural Default**

Procedural default occurs when a petitioner fails to properly present his claims in state court.  The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can

6

demonstrate cause for the default and actual prejudice as a result of the
alleged violation of federal law, or demonstrate that failure to consider the
claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  "[A] procedural default does not bar

consideration of a federal claim on either direct or habeas review unless the state court

rendering a judgment in the case 'clearly and expressly' states that its judgment rests

on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263 (1989).  The last

explained state court judgment should be used to make this determination.  See Ylst v.

Nunnemaker, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or

unexplained denial, it is presumed that the last reviewing court relied upon the last

reasoned opinion.  Id.

A petitioner may procedurally default a habeas claim if he fails to comply with a

state procedural rule that required him to have done something at trial to preserve his

claimed error for appellate review.  United States v. Frady, 456 U.S. 152, 167-69

(1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  In Michigan, if a

defendant fails to raise a claim on direct appeal of his criminal conviction, he may not do

so in a motion for relief from judgment unless the defendant shows good cause for

failure to raise the issue previously and actual prejudice from the alleged error.  Mich.

Ct. R. 6.508(D)(3) (Oct. 1989).

### III.  DISCUSSION

**A.  Claim #1 – Ineffective Assistance of Trial Counsel**

Petitioner first alleges that he was denied his constitutional right to the effective

assistance of trial counsel.  The U.S. Supreme Court has set forth a two-pronged test

7

for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  Id. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  Id. at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id. at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy.  Id. at 689.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Defense counsel can be deemed ineffective for failing to object to the admission of improper evidence, though such matters are often determined to be trial strategy. See Hodge v. Hurley, 426 F.3d 368, 385-86 (6th Cir. 2005).  Counsel can also be ineffective for failing to object to prosecutorial misconduct.  Id. at 377.  In addition, it can be ineffective for failing to properly litigate a Fourth Amendment issue.  See Kimmelman

8

v. Morrison, 477 U.S. 365, 375 (1986).  The petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  Id.; see Joshua v. DeWitt, 341 F.3d 430, 437-38 (6th Cir. 2003).  Defense counsel could also be deemed ineffective for failing to request a jury instruction or for failing to object to an improper instruction.  See Scott v. Elo, 302 F.3d 598 (6th Cir. 2002).

However, the fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  See Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002).  Defense counsel also cannot be deemed deficient for failing to make a futile objection or motion.  See McQueen v. Scroggy, 99 F.3d 1302, 1328 (6th Cir. 1996).

### 1.  Failure to Raise Legitimate Claims at the Suppression Hearings

Petitioner alleges that his trial counsel failed to raise a number of legitimate claims during the evidence suppression hearings that may have led to the suppression of the cocaine evidence and the dismissal of his case.  In attempting to prove the substantive merits of a Fourth Amendment violation pursuant to Kimmelman, Lopez-Lorza first argues that the troopers did not have probable cause to stop him because they were operating on orders from a bulletin from their superiors and because he did not actually commit any traffic violations.  Petitioner also alleges that the troopers deliberately delayed issuing him a lane use citation in order to allow time for additional troopers and a canine unit to arrive.  Furthermore, he argues that he was subject to an illegal arrest when the troopers directed him to sit in the back of their patrol car during a

9

search, which also prevented him from communicating a revocation of his consent to

the search of his car.  Finally, Lopez-Lorza contends that the dismantling of the

vehicle's doors was the product of an illegal stop, an illegal detention, and an illegal

search; and was without probable cause.  Petitioner now argues in his habeas corpus

petition that his trial counsel failed to raise these allegedly meritorious Fourth

Amendment claims at the evidentiary hearing and that this failure prejudiced him at trial

and prevented him from being acquitted or from having his case dismissed.

The trial court determined that Lopez-Lorza did commit one or more traffic

violations and therefore, the troopers did have probable cause to stop his vehicle.  The

Michigan Court of Appeals also noted that "[a]n otherwise valid stop of a vehicle for a

traffic violation does not become 'invalid by fact that it was a mere pretext for a narcotics

search' because a police officer's '[s]ubjective intentions play no role in ordinary,

probable-cause Fourth Amendment analysis.'"  People v. Lopez-Lorza, 2006 WL

335826, Slip. Op. at * 2 (Mich. App. Feb. 14, 2006) (quoting Whren v. United States,

517 U.S. 806, 812-13 (1996)).  The trial court also found that the troopers did not delay

writing a traffic citation with the purpose of waiting for more troopers and a canine unit to

arrive because the second group of troopers arrived within only a few minutes of the

beginning of the search.  Lopez-Lorza, 2006 WL 335826 at 2.  Furthermore, the entire

duration of the stop, detention, and search was only 15-20 minutes, which was found to

be reasonable by the trial court and the Court of Appeals.  Id.  Petitioner's argument that

he was subject to an illegal detention when he was directed to sit in the squad car

during the search was also dismissed by the trial court and the Michigan Court of

Appeals because this is a common procedure used for the safety of both the officers

10

and the person being stopped.  Id. at 4.  The trial court and the Court of Appeals also found that Lopez-Lorza was not denied his right to revoke his consent because it was reasonable for the troopers to have him sit in the patrol car during the search.  Id. Finally, the trial court and the Court of Appeals found that the dismantling of the vehicle doors was not the product of an illegal stop, detention, and search; and was in fact justified by probable cause because of Trooper Vincent's previous experience with finding narcotics hidden in door panels and because he actually observed the taped packages through the slit in the door during the search using a flashlight.  Id. at 5.

Petitioner's argument that his trial counsel was ineffective because of a failure to raise the above issues is without merit.  In habeas review, "judicial scrutiny of counsel's performance must be highly deferential.  We presume from the outset that a lawyer is competent, and therefore, the burden rests on the accused to demonstrate a constitutional violation."  United States v. Pierce, 62 F.3d 818, 833 (6th Cir. 1995) (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)).  In the present case, Lopez-Lorza has failed to meet this burden because he has not proven the merits of his Fourth Amendment claim as is required under Kimmelman.  Kimmelman, 477 U.S. at 375.  The facts that were determined by the trial court show no indication that Petitioner was the victim of an illegal stop, an illegal detention, or an illegal search and arrest. Therefore, ineffective assistance of counsel cannot be found because the Fourth Amendment claim has not been proven to be meritorious.

Lopez-Lorza has also failed to prove that his trial counsel was deficient to the point that he made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687-88.  From the record,

11

it cannot be shown that Counsel's alleged errors were so serious that they deprived the petitioner of a fair trial and that they were "outside the wide range of professionally competent assistance." Id. at 694.  Lopez-Lorza's trial counsel raised a number of reasonable Fourth Amendment claims and cited a multitude of cases in an attempt to have the cocaine evidence suppressed.  (Defendant's Motion to Suppress Physical Evidence and Incorporated Memorandum of Law, filed 2/14/96; T 3/28/97).  Petitioner has failed to overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances.  Strickland, 466 U.S. at 687-88.  Therefore, Lopez-Lorza has not met the Strickland standard to justify a finding of ineffective assistance of trial counsel with respect to his Fourth Amendment claims.

### 2.  Failure to Object to Drug Profile Testimony

The issue of the drug profile testimony will be addressed below under Claim #2 – Drug Profile Testimony.

### 3.  Failure to Request Critical Jury Instructions

As mentioned previously, Trooper Taylor testified at trial that Lopez-Lorza had stated "that he was following somebody, didn't know the area, and may have driven off on the left side" when he was stopped.  (T 10/7/97, 108).  In his petition for a writ of habeas corpus, Petitioner also argues that his trial counsel was ineffective because he failed to request Michigan Standard Jury Instruction CJI2d 4.1 (Defendant's Statements As Evidence Against the Defendant), which reads:

(1)  The prosecution has introduced evidence of a statement that it claims

12

the defendant made.  You cannot consider such an out-of-court statement as evidence against the defendant unless you do the following:

(2)  First, you must find that the defendant actually made the statement as it was given to you.  If you find that the defendant did not make the statement at all, you should not consider it.  If you find that he made part of the statement, you may consider that part as evidence.

(3)  Second, if you find that the defendant did make the statement you must decide whether the whole statement, or part of it, is true.  When you think about whether the statement is true, you should consider how and when the statement was made, as well as all the other evidence in the case.

(4)  You may give the statement whatever importance you think it deserves.  You may decide that it was very important, or not very important at all.  In deciding this, you should once again think about how and when the statement was made, and about all the other evidence in the case.

While the trial court did not give Instruction CJI2d 4.1, it did instruct on how the jury should handle out-of-court statements of witnesses who testified at trial.  Lopez-Lorza now argues that the omission of this instruction was prejudicial because the statement in question, if found by the jury to be true, helped to corroborate the prosecution's theory of Petitioner's guilt.

Even assuming that Lopez-Lorza's trial counsel should have requested CJI2d 4.1, the failure to do so was not so prejudicial to Petitioner to meet the second prong of the Strickland standard.  See Strickland, 466 U.S. at 687-88.  Because of the other strong evidence against Lopez-Lorza, including the recovery of eight packages of cocaine from the vehicle he was driving (with his thumbprint found on one of the packages), there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Had Instruction CJI2d 4.1 been included, it is still highly unlikely Lopez-Lorza would have

been acquitted.  Id.  Petitioner is not entitled to habeas relief on his first claim.

## B.  Claim #2 – Drug Profile Testimony

Petitioner next alleges that he was denied his constitutional right to a fair trial

because of the admission of improper drug profile testimony during trial.  The

admissibility and implementation of drug profile evidence during trial is controlled by

state law.  In Michigan, "drug profile evidence is not admissible as substantive evidence

of guilt."  People v. Hubbard, 209 Mich. App. 234, 241 (1995).  "A prosecutor may use

expert testimony from police officers to aid the jury in understanding evidence in

controlled substance cases."  People v. Murray, 234 Mich. App. 46, 53 (1999) (quoting

People v. Ray, 191 Mich. App. 706, 707 (1991)).  "For such expert testimony to be

admissible, '(1) the expert must be qualified; [and] (2) the evidence must serve to give

the trier of fact a better understanding of the evidence or assist in determining a fact in

issue . . . .'"  Murray, 234 Mich. App. at 53 (quoting People v. Williams, 198 Mich. App.

537, 541 (1993)).  Murray provides four factors that "may be helpful in distinguishing

between the appropriate and inappropriate use of drug profile evidence":

> First, the reason given and accepted for the admission of the profile
> testimony must only be for a proper use-to assist the jury as background
> or modus operandi explanation. … Attorneys and courts must clearly
> maintain the distinction between the profile and the substantive evidence,
> and the former should not argue that the profile has any value in itself; it is
> only an aid for the jury.  Second, the profile, without more, should not
> normally enable a jury to infer the defendant's guilt. The prosecutor must
> introduce and argue some additional evidence from the case that the jury
> can use to draw an inference of criminality; multiple pieces of a profile do
> not add up to guilt without something more. . . . In other words, the pieces
> of the drug profile by themselves should not be used to establish the link
> between innocuous evidence and guilt. . . . Third, because the focus is
> primarily on the jury's use of the profile, courts must make clear what is

14

and what is not an appropriate use of the profile evidence. Thus, it is usually necessary for the court to instruct the jury with regard to the proper and limited use of profile testimony. . . . Fourth, the expert witness should not express his opinion, based on a profile, that the defendant is guilty, nor should he expressly compare the defendant's characteristics to the profile in such a way that guilt is necessarily implied. . . . Although we acknowledge that the distinction between admissible and inadmissible drug profile evidence is often highly subtle, courts nevertheless must evaluate such evidence carefully in order to determine whether it is being used to explain the significance of otherwise innocuous circumstantial evidence, or rather to demonstrate that the defendant fits the profile and is therefore guilty.

Id. at 56-58 (citations omitted).

### 1.  Admission of the Drug Profile Testimony

During the trial of Lopez-Lorza, the prosecution called Michigan State Police Detective-Lieutenant Mario Burns to provide drug profile testimony.  Detective Burns testified as to the common behaviors of interstate drug couriers and suppliers.  The admission of this testimony, however, may have violated Michigan state law pertaining to drug profile testimony, id., because Burns testimony blended testimony about Petitioner's actual arrest with the drug profile testimony, (T 10/7/97, 156-160).  Lopez-Lorza now raises this issue and argues that the drug profile testimony was erroneously used as substantive evidence against him at trial.  Petitioner's trial counsel failed to raise an objection to the admission of Detective Burns' drug profile testimony during the trial proceedings.  Lopez-Lorza, 2006 WL 335826 at 8.

While Petitioner's claim regarding the drug profile testimony should be procedurally defaulted because of his failure to object to it in trial, it is also without merit under applicable habeas corpus law because the admission of the testimony constituted

15

harmless error.  Whether or not the testimony should have been admissible is a matter

of state law and is not determined in habeas corpus review.  However, there was

enough other properly admitted evidence submitted by the prosecution to convict

Lopez-Lorza even without the drug profile testimony.  As the Michigan Court of Appeals

accurately explained:

> [A]mple properly admitted evidence apart from the drug profile testimony
> supported [Petitioner's] conviction: the troopers involved in the stop and
> search of [Petitioner's] vehicle recounted their discovery of the eight brick
> shaped packages inside the door frames of [Petitioner's] vehicle, the
> prosecutor introduced into evidence the eight packages, testimony
> indicated that laboratory testing of the white substance in two of the
> packages showed that both the packages, weighing over two pounds
> each, contained pure cocaine, and fingerprint analysis matched at
> fourteen locations (or minutia) one latent fingerprint discovered on the
> outside of one of the bricks to the print of [Petitioner's] right thumb that the
> police took at the time of [Petitioner's] arrest.

Id. at 7.  This abundance of evidence was enough to convict Lopez-Lorza without the

drug profile testimony; therefore, the various errors and generally problematic manner in

which the trial court handled the testimony and the fact that Petitioner's trial counsel

failed to object are entirely irrelevant.  Accordingly, this testimony did not have a

"substantial and injurious effect" or influence on the jury's verdict.  Fry v. Pliler, 127

S.Ct. 2321, 2328 (2007).


### 2.  Failure to Qualify Witness as an Expert

The prosecution failed to seek to qualify Detective Burns as an expert witness

when calling him to provide the drug profile testimony at trial.  Petitioner's trial counsel,

however, also failed to raise an objection to this error of the prosecution and of the

court.  Id.

16

As explained above, the admission of the drug profile testimony at trial was harmless error.  Therefore, the fact that Detective Burns was not qualified as an expert by the prosecution was also harmless error.  While this is clearly a violation of Michigan state law, Murray, 234 Mich. App. at 53, it is subject to habeas corpus review. See Cristini v. McKee, 526 F.3d 888, 897 (6th Cir. 2008) ("A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.").  The other evidence submitted by the prosecution and admitted by the court was sufficient to convict Lopez-Lorza to the extent that the drug profile testimony and the failure to qualify Detective Burns as an expert witness did not have a "substantial and injurious effect" or influence on the jury's verdict.  Fry, 127 S.Ct. at 2328.  Accordingly, Petitioner is not entitled to habeas relief on his second claim.

**C. Claim #3 – Jury Instructions**

Petitioner next alleges that he was denied his constitutional right to a properly instructed jury.  To show constitutional error from a jury instruction that quotes a state statute, a defendant must "show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."  Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009).  The pertinent question on habeas review of a jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Cupp v. Naughten, 414 U.S. 141, 147 (1973).  It is not enough to show that the instruction was

17

"undesirable, erroneous, 'universally condemned,'" id. at 146, or incorrect under state law.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  Furthermore, courts must judge a jury instruction "in the context of the instructions as a whole and the trial record."  Id. at 72.  "To warrant habeas relief because of incorrect jury instructions, Petitioner must show that the instructions, as a whole . . . rendered the entire trial fundamentally unfair."  Murr v. United States, 200 F.3d 895, 906 (6th Cir. 2000).

An omitted or incomplete jury instruction "is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  A defendant is entitled to a jury instruction on "any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  Mathews v. United States, 485 U.S. 58, 63 (1988) (citing Stevenson v. United States, 162 U.S. 313 (1896)).  In other words, there must be some sufficient evidence to support the defendant's theory.  Bowling v. Parker, 344 F.3d 487, 500-01 (6th Cir. 2003).  "[V]arious forms of instructional error are not structural but instead trial errors subject to harmless-error review."  Hudgpeth v. Pulido, 129 S. Ct. 530, 532 (2008).  "However, when jury instructions do not require the government to prove each element of an offense beyond a reasonable doubt, structural error occurs, and a harmless error analysis is not required for a reviewing court to find a constitutional violation."  Doan v. Carter, 548 F.3d 449, 455 (6th Cir. 2008) (citing Sullivan v. Louisiana, 508 U.S. 275 (1993)).  The Constitution, however, does not require any particular words in advising a jury of the prosecutor's burden of proof "so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt."  Victor v. Nebraska, 511 U.S. 1, 5 (1994).

18

**1.  The "Mere Presence" Instruction**

In the present case, the first part of Lopez-Lorza's jury instruction claim arises out of the decision by the trial court not to give a "mere presence" instruction.  The trial court refused to allow the instruction because it only applies to a defendant being charged with aiding and abetting as an accomplice under state law.  Following this reasoning, the court found that the defense did not apply to the facts of the case.  Petitioner argued that the "mere presence" instruction should be allowed because, while the Petitioner was not being charged with aiding and abetting, the existence of the cocaine in the doors of a van owned by someone other than Petitioner was evidence that there were others involved in the criminal activity.  (T 10/8/97, 7-10).  The Michigan Court of Appeals held that "the trial court essentially gave the mere presence instruction when it explained in a supplemental instruction to the jury that "[a] person's presence by itself at a location where drugs are found is insufficient to prove constructive possession." Lopez-Lorza, 2006 WL 335826 at 8.

The trial court's supplemental instruction was sufficient to convey the essence of a "mere presence" instruction to the jury.  Therefore, a "mere presence" instruction was not necessary (nor was it even applicable to the facts of the case).  Even if one were to argue that the trial court should have made an exception and allowed the instruction in spite of there being no accomplice charges, this was a reasonable decision that fell within the court's discretion.  Because it was an omission, it is also "less likely to be prejudicial than a misstatement of the law."  Henderson, 431 U.S. at 155.  However, the decision not to give a "mere presence" instruction did not "by itself so [infect] the entire

19

trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147. Furthermore, the omission of the instruction conformed to state law and was replaced with a more relevant supplemental instruction. See Lopez-Lorza, 2006 WL 335826 at 8. In light of the evidence of the case and the other extensive jury instructions provided, the alleged failure to include a "mere presence" instruction was at most harmless error.

### 2. The "Specific Intent" Reinstruction

The second part of Petitioner's jury instruction claim arises out of the trial court's decision not to reinstruct the jury on "specific intent," despite defense counsel's arguments to the contrary, when the jury requested a reinstruction on "possession." A "specific intent" instruction had been read along with a number of other relevant instructions before the jury began its deliberation. However, after deliberation began, the jury submitted a note that asked ". . . is it considered possession if it is stored inside the door panel of the vehicle if it is not yours. Is that legal possession or legal possession with intent to deliver . . . ." (T 10/8/97, 110). The trial court decided that the jury should be reinstructed on "possession" because any extraneous instructions could have the effect of inappropriately suggesting a certain verdict to the jury. Lopez-Lorza's counsel argued against this decision and argued that only reinstructing on "possession" without "specific intent" would fail to provide the jury with all of the elements of the crime. (T 10/8/97, 110-113).

Similar to the analysis of the "mere presence" instruction, the decision of the trial court not to reinstruct the jury on "specific intent" did not "by itself so [infect] the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147. This is

because all of the necessary and relevant instructions had already been given by the trial court before the jury began its deliberation, including instructions on specific intent and the elements of the crime.  Because of this, there is not a "reasonable likelihood that the jury applied the [re]instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."  Waddington, 129 S. Ct. at 831.  The court also was justified in its refusal to provide reinstructions on issues that were not requested by the jury.  Allowing extraneous reinstructions could have prejudiced the jury by subtly suggesting to them what verdict they should pass down. Again, considering the evidence of the case and the other extensive jury instructions provided, the alleged failure to reinstruct on "specific intent" and the elements of the charge was at most harmless error.

Neither of the two errors alleged by Petitioner pertaining to jury instructions "show that the instructions, as a whole . . . rendered the entire trial fundamentally unfair."  Murr, 200 F.3d at 906.  At most they constituted harmless error and do not support a writ of habeas corpus in favor of Lopez-Lorza.  Accordingly, Petitioner is not entitled to habeas relief on his third claim.

21

## IV.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas

corpus is **DENIED WITH PREJUDICE**.


s/Marianne O. Battani
HON. MARIANNE O. BATTANI
UNITED STATES DISTRICT COURT


DATED: August 27, 2009

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was
served upon all parties of record via U.S. Mail and/or electronic filing.

s/Bernadette M. Thebolt
Case Manager